**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **ROBERT MULLEN,** | |
| *Plaintiff,* | |
| v. | **Case No. 2:18-cv-03113-JDW** |
| **NORTHAMPTON TOWNSHIP,** | |
| *Defendant.* | |

<u>**MEMORANDUM**</u>

While driving a snowplow for Northampton Township, Robert Mullen used the plow to clear a drive-thru at a local McDonald's and then to move the snow pile that he had created. Proving that no good deed goes unpunished, the Township fired Mullen for using Township property to benefit a private property owner. Mullen claims that justification was a pretext, and that the Township fired him because he had a disability and had taken leave under the Family Medical Leave Act. While one might find the Township's action unforgiving, Mullen has not adduced evidence to demonstrate that it was illegal. The Township is therefore entitled to summary judgment.

**I.      FACTS**

This case stems from Northampton Township's decision to fire Robert Mullen after he was caught using a Township plow truck to plow snow in a McDonald's drive-thru during a snowstorm on January 4, 2018. None of those facts are in dispute. Mullen, however, contends that the Township fired him for discriminatory reasons and as an act of retaliation.

Mullen worked for the Township as a laborer in the Department of Parks and Recreation since May 2006. In this role, Mullen cut grass, performed various maintenance assignments, and

plowed snow in the winter, among other things. The Township does not have any written disciplinary records pertaining to Mullen. Over the years, Mullen suffered from ailments such as vertigo, a hernia, and a knee injury. Because the vertigo episodes tended to occur while he was driving at night, Mullen requested an accommodation to be excused from snowplow duties at night time. The Township granted this request in the 2016 and 2017 snow seasons and permitted Mullen to stop plowing once it got dark. With respect to the hernia, the Township provided help to Mullen and allowed him to return to work on light duty after he had corrective surgery in July 2016.

In March 2017, Mullen slipped on ice and injured his knee while working. He filed a formal work-injury report with the Township's Human Resources in May 2017 and sought treatment at that time. Because summer is a busy time of year for Mullen, work wise, he opted to have his knee surgery on August 3, 2017. The Township's Director of Parks and Recreation thanked Mullen for holding-off on his knee surgery while it was busy. Following surgery, Mullen was out on medical leave for several weeks. He returned to work in November 2017. The Township terminated Mullen on January 18, 2018. The Township explained that Mullen was being fired for plowing private property on January 4, 2018, though there was no formal policy prohibiting such conduct. Mullen claims that this proffered reason was pretext for discrimination and retaliation due to his disability and taking medical leave.

On July 25, 2018, Mullen filed the instant lawsuit against the Township for violations of the Rehabilitation Act (the "Rehab Act"), the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act of 1993 ("FMLA"). After discovery, the Township moved for summary judgment on each of Mullen's claims. The motion is now ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *Dodson v. Coatesville Hosp. Corp.*, No. 18-3065, --- Fed. App'x ----, 2019 WL 2338461, at *2 n.6 (3d Cir. June 3, 2019) (quotation omitted).

## III.    ANALYSIS

### A.    Discrimination Claims

"With limited exceptions, the same legal principles govern ADA and RA claims." *C.G. v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013). Thus, under the familiar *McDonnell Douglas* framework, Mullen must first establish a *prima facie* case of disability discrimination by demonstrating that "(1) he is a disabled person within the meaning of the [Rehab Act and] ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or

without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *West v. Northampton Clinic Co., LLC*, No. 18-cv-3132, --- Fed. App'x ----, 2019 WL 3814558, at *3 (3d Cir. Aug. 14, 2019) (quotation omitted). After the Township proffers a legitimate non-discriminatory reason for the adverse employment decision—Mullen's termination—Mullen must then come forward with evidence that the Township's proffered explanation is pretextual. *Id.*

Mullen can survive summary judgment by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (quotation omitted). "[T]he *prima facie* case and pretext inquiries often overlap. … [E]vidence supporting the *prima facie* case is often helpful in the pretext stage, and nothing about the *McDonnell Douglas* [sic] formula requires [the Court] to ration the evidence between one stage or the other." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008). The Township contends, and the Court agrees, that Mullen cannot survive summary judgment because he has not made a showing sufficient to establish that the Township terminated him because of his disability. He also has not shown that the Township's proffered reason for doing so was a pretext for discrimination.

Because the *prima facie* case and pretext inquiries tend to overlap, Mullen relies on much of the same evidence in an attempt to satisfy both aspects of the *McDonnell Douglas* formula that the Township has challenged. To satisfy the third prong of his *prima facie* case, the causation element, Mullen must prove that the Township treated him differently based on his disability. *See C.G.*, 734 F.3d at 236. That is, he must show that his disability "played a role in the [Township's] decisionmaking process and that it had a determinative effect on the outcome of that process."

*Kelly v. Univ. of Pennsylvania Health Sys.*, No. 16-cv-618, 2016 WL 4149991, at \*9 (E.D. Pa. Aug. 2, 2016), *aff'd*, 708 F. App'x 60 (3d Cir. 2017). To make this showing, Mullen points to: (i) the temporal proximity of his termination, (ii) the lack of a formal policy against using a Township plow truck to plow on private property, (iii) the lack of a written disciplinary record, and (iv) a stray comment by a Township employee. None of these facts demonstrates that the Township fired Mullen because of his disability, especially when considered in light of the fact that the Township granted Mullen's prior requests for disability-related accommodations.

Contrary to Mullen's assertions, the timing of his termination is not unusually suggestive of discriminatory intent. As an initial matter, the record is unclear whether Mullen returned from his knee surgery in September or November 2017. However, because the Court must view the facts and draw all reasonable inferences in Mullen's favor for purposes of resolving the Township's motion, the Court assumes that Mullen did not return to work following his knee surgery until November 2017. The Township terminated his employment on January 18, 2018. At most, more than two-and-a-half months had passed before Mullen was terminated after returning from knee surgery. This temporal proximity is not unduly suggestive. *Compare Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two-day period between protected activity and adverse employment decision was unduly suggestive) *with Karaffa v. Twp. of Montgomery*, 560 F. App'x 133, 135 (3d Cir. 2014) (three-and-a-half-month period between protected activity and adverse employment decision was not unduly suggestive) *and Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three-week period between protected activity and adverse employment decision was not unduly suggestive).

Mullen also does not articulate how the Township's lack of a formal policy against using a Township snowplow on private property raises an inference that the Township terminated Mullen

based on his disability. Likewise, the lack of a written disciplinary record for Mullen during his years of employment with the Township does not move the needle. *See Johnson v. Verizon Servs. Corp.*, No. 16-cv-1023, 2017 WL 1397240, at *4 (E.D. Pa. Apr. 18, 2017) ("[W]hile lack of criticism of an employee's performance and positive reviews can be relevant …, they are not sufficient, standing alone, to defeat a motion for summary judgment."). Finally, the fact that the Township's Director of Parks and Recreation thanked Mullen for holding-off on his knee surgery during the summer does not lead to an inference of discrimination. Mullen argues that the "Township became fearful of Plaintiff's injuries and extended time off and used the snowplow incident as a pretext to terminate his employment." (ECF No. 21 at 4.) However, he has no evidence to support that assertion. Instead, it "is pure conjecture and is wholly insufficient" to survive summary judgment. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 455 (3d Cir. 2006); *see also Mroczek v. Bethlehem Steel Corp.*, 126 F. Supp. 2d 379, 390 (E.D. Pa. 2001) ("[A] plaintiff's *belief* alone that [he] is a victim of discrimination is not enough to meet [his] burden of proof.") (original emphasis) (citations omitted).

In cases where the plaintiff's evidence "consist[ed] of stray remarks, past positive reviews, and unspecific comparator evidence[,]" those "assertions [were] insufficient to create a genuine issue of material fact as to pretext after fulsome discovery." *Kelly*, 2016 WL 4149991 at *8. Mullen has proffered even less evidence here. In addition, like the defendant in *Kelly*, over the course of Mullen's employment, the Township granted Mullen's requested accommodations. Thus, Mullen "cannot point to direct or circumstantial evidence of discrimination based on [his] disability." *Id.* at *9.

Even if Mullen had made out a *prima facie* case of discrimination, his claim would fail. The Township has offered a legitimate, non-discriminatory reason for Mullen's termination: his

use of the Township's snowplow to clear private property. It therefore falls to Mullen to present evidence that the Township's justification was pretextual. He cannot do so. To discredit an employer's proffered reason, a plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (quotation omitted). Instead, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 1108-09 (same).

Here, Mullen contends that the Township's proffered reason for the termination—his use of a Township plow truck to plow private property—was "outlandish" and a "smokescreen." (ECF No. 21 at 8.) However, the Court disagrees. While the Township's decision was extremely harsh, there is nothing implausible or incoherent about a municipal entity deciding to terminate an employee who uses the Township's property to benefit a private property owner. Mullen's argument amounts to an attempt to cast the Township's decision to terminate him as "too grave of a disciplinary action. But challenging an employer's decision that an incident is serious enough for a given disciplinary action does not support an inference of pretext." *Kelly*, 2016 WL 4149991 at *7; *see also Keller*, 130 F.3d at 1108 ("[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken …."). Thus, the Township is entitled to summary judgment on Mullen's Rehab Act and ADA discrimination claims.

### B. Retaliation Claims

Mullen's various retaliation claims do not fare any better, and the Township is entitled to summary judgment on these claims as well, due to Mullen's failure to demonstrate a causal

connection between his medical leave and his termination, as well as pretext. "To establish a *prima facie* case of retaliation under the [Rehab Act or] ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citations omitted). The *prima facie* case for an FMLA retaliation claim is nearly identical. To succeed on that claim, Mullen must establish that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of FMLA rights. *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (quotations omitted).

With respect to the third element of these retaliation claims, the causation prong, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted). Absent such proof, "the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id.* (quotation omitted). That evidence may include "any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015). After a plaintiff establishes a *prima facie* case, the standard burden-shifting framework under *McDonnell Douglas* applies. *Id.* at 193. Again, the Township challenges the causation and pretext portions of Mullen's retaliation claims.

Mullen contends that "it is undisputed that [he] took medical leave that would be deemed FMLA qualifying for his knee surgery[.]" (ECF No. 21 at 10.) Indeed, Mullen relies on the same evidence he used to support his discrimination claims in an attempt to establish the causal element of his *prima facie* retaliation claims and to demonstrate pretext. (*Id.* at 9, 11.) That evidence is insufficient for the same reasons. As set forth above, the temporal proximity between Mullen's medical leave to recover for knee surgery and his termination is not unduly suggestive. Likewise, Mullen has not alleged a pattern of intervening antagonism by the Township. Finally, while Mullen makes the conclusory statement that "the circumstances as a whole suggest serious inconsistencies" (ECF No. 21 at 9), he fails to explain what those serious inconsistencies are or how the Township's proffered reason for the termination is inconsistent. Thus, the Township is entitled to summary judgment on Mullen's Rehab Act, Ada, and FMLA retaliation claims as well.

The Township also argues that Mullen's vertigo does not qualify as a serious health condition to justify FMLA leave. However, Mullen does not contend that he invoked his right to FMLA leave based on his vertigo. Therefore, the Court need not address that issue.

## IV. CONCLUSION

Because Mullen has failed to demonstrate the existence of essential elements of his various discrimination and retaliation claims in Counts I – III of his Complaint, the Township is entitled to summary judgment on each of these claims. An appropriate Order follows.

**Date:** November 7, 2019

BY THE COURT:

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.